COURT OF APPEALS OF VIRGINIA


Present:    Chief Judge Felton, Judges Elder and Kelsey


LURIA NICOLE GREENE
                                                    MEMORANDUM OPINION[*] BY
v.        Record No. 3012-06-1                       JUDGE LARRY G. ELDER
                                                        APRIL 22, 2008
COMMONWEALTH OF VIRGINIA


                    FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
                               Norman A. Thomas, Judge

            (Luria Greene, *pro se*, on brief), for appellant.  Appellant
            submitting on brief.

            (Robert F. McDonnell, Attorney General; Richard B. Smith,
            Special Assistant Attorney General, on brief), for appellee.
            Appellee submitting on brief.


        Luria Nicole Greene (appellant) appeals her bench trial conviction for the misdemeanor

offense of failing to answer a subpoena issued by the Virginia Department of Charitable Gaming

(VDCG) in violation of Code §§ 18.2-340.18 and 18.2-340.37.  She contends (a) no statute

criminalizes her failure to answer the subpoena, (b) the conviction violates her right against

self-incrimination, (c) the evidence is insufficient to support her conviction, and (d) the subpoena

was not properly served.  To the extent these claims have been properly preserved and presented

to us for purposes of appeal, we hold the court committed no error, and we affirm appellant's

conviction.

                                    I.  BACKGROUND

        Under settled principles, we review the evidence in the light most favorable to the

Commonwealth.  Commonwealth v. Hudson, 265 Va. 505, 514, 578 S.E.2d 781, 786 (2003).

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

That principle requires us to "discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom." Wright v. Commonwealth, 196 Va. 132, 137, 82 S.E.2d 603, 606 (1954).

So viewed, the evidence at trial showed that in 2005, appellant served as the treasurer of the Phoebus Athletic League, an organization under investigation by the VDCG. Pursuant to Code § 18.2-340.18, the VDCG issued a subpoena to appellant requiring that she "appear as a witness, to give testimony and present [specified] records or documents on January 19, 2006, 10:00 a.m., to Bob Jasinowski, Special Agent with the Department of Charitable Gaming" at the VDCG's office in Norfolk. The subpoena specified various records of the Phoebus Athletic League that appellant was required to produce.

At about 8:30 a.m. on December 20, 2005, Jasinowski and his partner, Special Agent Gail Greenia, went to appellant's home to serve the subpoena. Jasinowski identified himself, displayed his credentials, told appellant he had a subpoena for her, showed her the subpoena, and tried to put it in her hand. Appellant refused to grasp the subpoena and entered her home through the front door. Jasinowski placed the subpoena at a conspicuous place between the front door and the door frame of her residence. About twenty minutes later, Jasinowski and Greenia returned to appellant's home. At that time, appellant was exiting her home through the front door and walking to a parked car. Greenia noticed that the subpoena was no longer on the front door. Greenia said the subpoena also was not in appellant's hand or on the ground beside the door.

Appellant failed to appear at the VDCG's Norfolk office on January 19, 2006, as the subpoena commanded. At the Commonwealth's request, a grand jury indicted appellant for willfully failing to comply with the VDCG's subpoena. At trial, appellant moved to strike the

evidence on the ground that disobeying an investigatory subpoena issued by the VDCG did not constitute a criminal offense. Appellant also claimed, both in argument and in her testimony, that she had no contact with Agents Jasinowski and Greenia on the day of service and never saw the subpoena left at her door. Finally, appellant contended that all of the subpoenaed documents had earlier been obtained by the Hampton Police Department and forwarded to the VDCG prior to the issuance of its subpoena. Appellant also averred that, after receiving the subpoena, she met with VDCG agents and elected not to give any statements.

The trial court rejected appellant's defenses and, sitting as fact finder, found her guilty of willfully refusing to obey the VDCG's investigatory subpoena. Commenting on the weight it gave to appellant's testimony, the trial court stated her credibility was "extraordinarily lacking."

## II. ANALYSIS

### A. WILLFUL NONCOMPLIANCE WITH VDCG SUBPOENA AS A CRIMINAL OFFENSE

Code § 18.2-340.18(4) authorizes the VDCG to "issue subpoenas for the attendance of witnesses before it, administer oaths, and compel production of records or other documents and testimony of such witnesses whenever, in the judgment of the Department, it is necessary to do so for the effectual discharge of its duties." Code § 18.2-340.37(A) makes clear that anyone "who violates the provisions of this article . . . shall be guilty of a Class 1 misdemeanor." Article 1.1:1, titled "Charitable Gaming," includes both §§ 18.2-340.18 and 18.2-340.37(A).

"While penal statutes must be strictly construed against the Commonwealth, 'the plain, obvious, and rational meaning of a statute is always preferred to any curious, narrow or strained construction; a statute should never be construed so that it leads to absurd results.'" Newton v. Commonwealth, 21 Va. App. 86, 89, 462 S.E.2d 117, 119 (1995) (quoting Branch v. Commonwealth, 14 Va. App. 836, 839, 419 S.E.2d 422, 424 (1992)). Plainly read, Code § 18.2-340.18(4)'s grant of power to the VDCG to issue investigatory subpoenas necessarily

- 3 -

imposes a corresponding statutory duty to comply on the individual to whom a lawful subpoena is directed. The individual complies by appearing as directed and, under oath, either answering the questions asked and producing the documents requested or, if he objects to doing so, raising viable evidentiary privileges justifying his refusal to respond. The individual may not, however, simply refuse to appear. Such defiance violates the individual's statutory duty under Article 1.1:1 to comply with the subpoena and, thus, constitutes a misdemeanor under Code § 18.2-340.37. The trial court, therefore, correctly rejected appellant's assertion that she committed no criminal offense by willfully refusing to comply with the VDCG investigatory subpoenas.

### B. ALLEGED VIOLATION OF APPELLANT'S RIGHT AGAINST SELF-INCRIMINATION

Appellant claims she had the right to disobey the subpoena on the ground that, *if* she had appeared as commanded by the subpoena and brought with her the requested documents, she could then have elected to invoke her Fifth Amendment privilege against self-incrimination. Appellant provides no citation to any legal authority in support of this position, and she also has failed to preserve it for appeal. Therefore, we do not address it on the merits.

Where, as here, an assertion of law cannot be taken as a given on appeal, the failure to cite "any authority in support of this argument" violates Rule 5A:20(e). E.g. Epps v. Commonwealth, 47 Va. App. 687, 718, 626 S.E.2d 912, 926 (2006) (en banc), aff'd, 273 Va. 410, 641 S.E.2d 77 (2007). Further, under Rule 5A:18, appellant's failure to object with specificity at trial on the grounds she now alleges on appeal prevents us from considering the merits of her argument that her right to invoke her privilege against self-incrimination insulates her from punishment for failing to appear as commanded by the subpoena. E.g. Marlowe v. Commonwealth, 2 Va. App. 619, 621, 347 S.E.2d 167, 168 (1986) (holding objection must be "timely made and the grounds stated with specificity"). On brief, appellant relies on the

following statements and events as supporting her claim of preservation: the admission into evidence of the October 19, 2006 advice of rights form and the trial court's review of same; the trial court's ruling that the VDCG was permitted to order her to appear to give testimony; and appellant's argument in closing that she met with Agent Jasinowski and elected to make no statements, as the advisement of rights form stated she was permitted to do. Through these statements and events, appellant may have preserved for appeal a challenge involving the assertion of her privilege against self-incrimination when she finally met with Agent Jasinowski on October 19, 2006, had she raised such a challenge in this appeal. However, these arguments have no direct bearing on her failure to appear nine months earlier on January 19, 2006, as ordered by the VDCG subpoena, the act upon which her conviction rests.

Because appellant failed on brief to cite authority supporting this argument and failed at trial to make the court aware of this argument, we do not consider it.

## C. SUFFICIENCY OF THE EVIDENCE

At trial, appellant testified she never met the VDCG special agents on December 20, did not hear either of them say they had a subpoena for her, never saw the subpoena they attempted to put in her hand, and never found a subpoena on her front door. Because none of these things happened, appellant argued, she could not be convicted of willfully failing to comply with the subpoena.

Sitting as fact finder, however, the trial court disbelieved appellant's denials and accepted the testimony of the VDCG special agents. The trial court acted within its proper role in doing so. "The power to segregate a witness's testimony into the believable, partly believable, or wholly unbelievable is an exercise of decisional discretion intrinsic to the fact finding task and essential to its proper performance." Harper v. Commonwealth, 49 Va. App. 517, 523, 642 S.E.2d 779, 782 (2007). The trial court was entitled to conclude that appellant's testimony was

an unsuccessful effort at lying to conceal her guilt. See generally Haskins v. Commonwealth, 44 Va. App. 1, 10-11, 602 S.E.2d 402, 406 (2004). Unless such a conclusion rests on inherently incredible proof, we may pass no judgment on it. "As an appellate court, we are not permitted to reweigh the evidence." Nusbaum v. Berlin, 273 Va. 385, 408, 641 S.E.2d 494, 507 (2007).[1]

## D. PROPER SERVICE OF THE SUBPOENA

Appellant argues on brief that the VDCG subpoena was not "lawfully served" because the VDCG special agents did not use "efforts that could reasonably be expected to reach the intended party." She also contends that leaving the subpoena between the front door and door frame did not "fit with the scope of the usual meaning of personal service." Appellant, at trial, did not *expressly* state that the manner of service of the VDCG investigatory subpoena was legally insufficient. Nevertheless, the record establishes that the parties and the trial court addressed the issue in a manner sufficient to preserve it for appeal. See, e.g., Robinson v. Commonwealth, 13 Va. App. 574, 576, 413 S.E.2d 885, 886 (1992) ("The purpose of Rule 5A:18 is to avoid unnecessary appeals, reversals, and mistrials by requiring litigants to inform the trial judge of the action complained of so that the judge has the opportunity to consider the issue intelligently and take timely corrective action.").

In ruling on appellant's motion to strike at the close of the Commonwealth's evidence, the trial court, *sua sponte*, expressly considered the legal sufficiency of the service, reasoning as follows:

> [Appellant] was notified by Investigator Jasinowski of what the document was[, a subpoena]. [Appellant] simply refused [the subpoena].

---

[1] Appellant also argues on brief that, even if she knew of the VDCG subpoena, the VDCG received the requested documents from the Hampton Police Department from its earlier independent investigation of appellant's role as treasurer of the Phoebus Athletic League. Appellant concludes that "[t]his satisfied the subpoena's command to produce documents." Once again, appellant cites no legal authority for this proposition, and we know of none.

The fact that it was tucked into the door is an alternative effort, but [appellant] is responsible for that subpoena that she refused and there are actually two lawful methods of service here. One, this is the equivalent of personal service. She just refused it . . . . [Two,] the posted service. There is no evidence at this point that it's deficient in any way, [and] it was indeed an alternative form.

Later, in closing argument, the Commonwealth contended, "There was service. There was another attempted service." In response, appellant argued in closing, "[T]here is no evidence *even in the light most favorable to the Commonwealth* that the subpoena during the 20 minutes between the time it was put on the front door and the time that the agents say they saw the person leave, that it had been moved." (Emphasis added). Implicit in this argument is appellant's position that, from a legal perspective, personal service did not occur in the manner the Commonwealth argued because, if it had so occurred, it would have been unnecessary for appellant to make the argument that the subpoena could have been moved in the 20 minutes before the person the agents identified as appellant left the house. In rebuttal argument, the Commonwealth again raised the issue, arguing appellant's testimony that the agents never attempted to serve her was not credible and that "service [of the subpoena] was complete" when "[the agents] said, here is a subpoena, and [appellant] walked past them without accepting it," "mak[ing] the missing 20 minutes a mute [sic] point." By convicting appellant of the charged offense, the trial court implicitly held that the service of process was legally sufficient. Thus, the issue was presented to the trial court and preserved for appeal.

On the merits, the law and evidence support the trial court's ruling. "In order for a court to obtain jurisdiction over [a] person . . . , process must be served in the manner provided by statute." Steed v. Commonwealth, 11 Va. App. 175, 178, 397 S.E.2d 281, 284 (1990). Appellant concedes on brief that the statute at issue here, Code § 18.2-340.18, "do[e]s not specify a particular manner of service required." In the absence of any statutory requirement to

the contrary, "it is generally held that if the process server and defendant are within speaking distance of each other, and such action is taken as to convince a reasonable person that personal service is being attempted, service cannot be avoided by physically refusing to accept the summons." Nielson v. Braland, 119 N.W.2d 737, 739 (Minn. 1963); see 62B Am Jur. 2d Process § 190 (2007).  Here, Agent Jasinowski identified himself to appellant, displayed his credentials, told her he had a subpoena for her, showed her the subpoena, and tried to put it in her hand.  Appellant refused to take the subpoena and entered her home through the front door. Jasinowski placed the subpoena between the front door and its frame so that it was readily visible to a person opening the door from the inside or the outside.  That evidence, viewed in the light most favorable to the Commonwealth, supported the trial court's ruling that appellant was personally served with the subpoena in a manner that complied with the law.

III.

Because the trial court did not err in finding Greene guilty of willfully refusing to comply with the VDCG subpoena, we affirm her conviction.

Affirmed.

Kelsey, J., dissenting.

I respectfully dissent on the question whether Greene's defiance of the VDCG subpoena (which I accept as fully proven) constitutes a criminal offense. Unless the "basic law" provides for some other penalty, Code § 2.2-4022, courts ordinarily enforce administrative subpoenas upon a petition for enforcement filed by the agency. Here, the basic law makes "violations of the provisions" of Article 1.1:1 a misdemeanor under Code § 18.2-340.37(A). Another provision in Article 1.1:1, Code § 18.2-340.18(4), authorizes VDCG subpoenas but does not expressly make it a statutory violation to disobey them. Given this ambiguity, I would hold the basic law did not expressly criminalize Greene's willful disobedience of the VDCG subpoena.